# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: ADIMINISTRATIVE SUBPOENA NO. 25-1431-014** | MISCELLANEOUS ACTION<br><br>NO. 25-39<br><br>FILED UNDER SEAL |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO CHILDREN'S HOSPITAL OF PHILADELPHIA'S MOTION TO SEAL

Against the controlling law in this Circuit, Children's Hospital of Philadelphia ("CHOP") asks to litigate the matter it chose to initiate against the United States entirely in secret. In support of its position, CHOP relies on the wrong legal standard to argue that wholly speculative and vague fears of being "singled out for being transgender" and equally hypothetical safety concerns justify sealing the entire proceedings. But these arguments fall well short of the compelling interest accompanied by a specific, clearly defined, serious injury that is necessary to overcome the strong presumption against sealing a judicial record in this Circuit. CHOP does not identify a source of law—because there is none—that would permit the Court to deprive the American public of its right of access, nor has it specifically identified any privileged, confidential, or sensitive pieces of information in its filings. The Court should deny CHOP's motion to petition the Court behind closed doors.

### ARGUMENT

**I.   There are no specific, compelling, countervailing interests that can overcome the strong presumption of openness of judicial records to the public.**

"The district court is not a star chamber. We are a public institution in a democratic republic and the public has a right of access to our filings. That right is founded in the common

law and 'antedates the Constitution.'" *In re Application of Storag Etzel GmbH*, No. CV 19-MC-209-CFC, 2020 WL 2949742, at *4 (D. Del. Mar. 25, 2020) (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 343 (3d Cir. 1986)) *R&R adopted except for First Amendment analysis,* 2020 WL 2915781 (D. Del. June 3, 2020). "In the Third Circuit, the right is particularly robust. … Powerful public interests undergird the right. 'It has been justified on the ground of the public's right to know, which encompasses public documents generally, and the public's right to open courts, which has particular applicability to judicial records.'" *Id.* at *7 (quoting *United States v. Criden*, 648 F.2d 814, 819 (3d Cir. 1981)). Once a document has been filed with the Court, it becomes a "judicial record" to which the common law right of access attaches. *See In Re: Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) ("A 'judicial record' is a document that 'has been filed with the court … or otherwise somehow incorporated into a district court's adjudicatory proceedings.' Once a document becomes a judicial record, a presumption of access attaches." (quoting *In re Cendant Corp.*, 260 F.3d 183, 192–93 (3d Cir. 2001)).

Furthermore, the people's interest in their right of access is heightened when their government is litigating on their behalf; as other circuit's courts of appeals have pointed out: "The appropriateness of making court files accessible is accentuated in cases where the government is a party: in such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch." *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987); *see also EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (noting that the fact that government agency was litigating party and objected to sealing, "strengthens the already strong case for access"); *Doe v. Public Citizen*, 749 F.3d 246, 271 (4th Cir. 2014) ("The interest of the public

and press in access to civil proceedings is at its apex when the government is a party to the litigation.").

CHOP apparently misapprehends the appropriate standard the Court is to apply under these circumstances by arguing that the Court is to apply the factors described in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994). *See* Memo. at 2. Because CHOP seeks to seal judicial records rather than seeking a protective order for documents exchanged between the parties, the *Pansy* factors are inapposite. "The essential substantive command of *Avandia* is that it is error to conflate 'the *Pansy* factors with the common law right of access standard. The *Pansy* factors are not a substitute for the common law right of access standard—which begins with the presumption of access. The scale is tipped at the outset in favor of access." *In re Storag Etzel GmbH*, 2020 WL 2949742, at *10 (quoting *Avandia*, 924 F.3d at 677) (citation modified).

The correct standard—the common law right of access standard—is considerably more demanding of CHOP than the one suggested in its motion and "begins with a thumb on the scale in favor of openness." *Avandia*, 924 F.3d at 672. "This arduous standard reflects the importance of the public's right to access public records, including those that are part of judicial proceedings." *Veikos v. Trs. of Univ. of Pennsylvania*, No. 2:20-CV-04408, 2021 WL 4300624, at *1 (E.D. Pa. Sep. 22, 2021) (citation modified). "Under Third Circuit law, a party seeking to file material under seal must make a specific showing, and broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." *Id.* That is, CHOP "must name a specific injury to be prevented." *FTC v. Thomas Jefferson Univ.*, No. 21-1817, 2022 WL 473024, at *3 (3d Cir. Feb. 16, 2022). And that injury must be both "clearly defined and serious." *Avandia*, 924 F.3d at 672. In sum, CHOP "bears the burden of demonstrating 'that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and

serious injury'" to the hospital. *In re ESML Holdings Inc.*, 135 F.4th 80, 93–94 (3d Cir. 2025) (quoting *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994)).

The Court, for its part, is required to "articulate the compelling, countervailing interests to be protected [and] make specific findings on the record concerning the effects of disclosure." *Avandia*, 924 F.3d at 672 (citation modified). Moreover, the Court of Appeals has instructed that "careful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants. To that end, the District Court must conduct a document-by-document review" of the contents of the challenged documents." *Id.* at 673.

CHOP has failed to carry its heavy burden. The reasons CHOP offers in its motion far fall short of "compelling" and are precisely the sort of "broad allegations of harm" that are insufficient. *See Veikos,* 2021 WL 4300624, at *1. The hospital claims that seeking judicial intervention behind a curtain of secrecy is necessary to protect the privacy and vague and unsubstantiated fears of patients that they might be "surveilled or targeted for exposure by opponents" of gender-related care or might choose to forgo further treatment. Memo at 3–4. But CHOP offers no first-hand evidence of those intangible fears, or any non-conjectural, factual basis for them that would enable the Court to make the specific findings necessary to override the public's right of access.

CHOP also speculates that if the public were to learn that it has brought this action against the government, CHOP itself might be attacked. Again, the hospital offers no actual factual evidence that violence would likely follow such disclosure. To be sure, CHOP offers examples of *threats* of violence made against other providers two or three years ago unrelated to a subpoena or any other litigation. Such examples are insufficient to meet the exacting burden to show how disclosure of this litigation over the validity of portions of an administrative subpoena

would cause hospital employees or patients—who cannot be identified through the judicial records here—to be subjected to violence. The generalized fear that some unnamed, deranged individual might feel emboldened to do harm merely because he or she became aware that CHOP received a subpoena is precisely the type of "broad allegations of harm, bereft of specific examples or articulated reasoning" that are insufficient to overcome the public's right of access. *In re Cendant*, 260 F.3d at 194.

Moreover, CHOP is already widely known as a provider of gender-related care to children and adolescents. It is also widely known that the Attorney General has directed the Department of Justice to investigate potential unlawful and fraudulent practices in the provision of such care to minors. CHOP's papers do not establish that public disclosure of this litigation would itself worsen or increase any hypothetical risks it may already face. The existence of a governmental investigation into these practices has precious little to do with any harm that flows from CHOP's already prominent visibility in this area.

At issue in this motion is not whether personal information of patients or employees will be exposed in this miscellaneous case—they will not—but rather simply the determination as to whether CHOP must comply with certain parts of the subpoena. Moreover, there is nothing in CHOP's filings that could reasonably be considered sensitive or confidential. In this context, CHOP's concerns about privacy and safety are, at best, exaggerated and purely speculative.

## II.     There is no legal basis to seal the docket.

The statute authorizing the subpoena at issue, 18 U.S.C. § 3486, has numerous privacy-related provisions, none of which authorize sealing the docket or keeping an administrative subpoena secret.[1] Indeed, the statute largely prohibits the government from disclosing or sharing

---

[1]     The administrative subpoena at issue here is colloquially called a "HIPAA subpoena," reflecting its origin in legislation enacted as part of the Health Insurance Portability and Accountability Act of 1996.

"health information about an individual" that is obtained via a HIPAA subpoena, and generally prohibits the government from using protected health information about a patient against that patient. 18 U.S.C. § 3486(e). The statute allows the government—but not the subpoena recipient—to seek a nondisclosure order preventing the subpoena recipient from revealing the existence of the subpoena. 18 U.S.C. § 3486(a)(6).

Hence, Congress had privacy on its mind when it enacted the statute and could have provided for administrative subpoenas issued under the statute to remain secret. It did not do so. Similarly, Congress knows how to make similar investigative proceedings secret, such as *qui tam* investigations. *See* 31 U.S.C. §§ 3730(b)(2), (b)(3) (initial 60-day sealing period and government seal extension requests to permit confidential government investigation of allegations). But with HIPAA subpoenas, Congress specifically chose not to do so. Because courts must "presume that [Congress] says in a statute what it means and means in a statute what it says there," *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992), this Court's inquiry should begin and end with the statute.

If anything, Congress's decision to cloak grand jury investigations in secrecy highlights the distinction—not the similarity—between such subpoenas and the one at issue here, undercutting CHOP's argument. Since neither Congress nor the courts have conferred secrecy on administrative subpoenas, general public awareness of their issuance provides no basis for sealing. See *United States v. ISS Marine Svcs., Inc.*, 905 F. Supp. 2d 121, 141 (D.D.C. 2012) (unsealing record of administrative subpoena enforcement proceedings and noting that "revealing the fact that [the subpoena recipient] is the subject of some kind of government investigation" is "unavailing" as a reason to seal docket).

To be clear, the United States acknowledges that the subject matter of the subpoena and this litigation implicates sensitive privacy interests and the government remains committed to

fully honoring the statute's privacy protections. But CHOP urges the Court to enact a sweeping rule that this entire proceeding must be kept secret simply because the subject matter is controversial and involves investigation into medical treatment. Yet many government investigations address contentious issues, and virtually all medical records contain sensitive information. Under the hospital's logic, any litigation touching on a debated medical practice would necessarily proceed in secrecy in contravention of the public's strong right of access, effectively entitling medical providers to sealed dockets whenever they litigate about a controversial or publicly debated medical procedure—an exception to the public's right to acquire information about judicial proceedings that is untenable.

Finally, as other district courts (including in this circuit) have recognized, the Judicial Conference of the United States has emphasized in a policy statement on sealed cases that federal courts should seal cases only upon a showing of "extraordinary circumstances" and that "sealing an entire case file is a last resort." *Pugliano v. Grace Holmes, Inc*., No. 2:11-CV-OI562, 2012 WL 1866380, at *1 & n.1 (W.D. Pa. May 22, 2012)) (quoting Judicial Conference Policy on Sealed Cases, available at https://www.uscourts.gov/sites/default/files/judicialconference-policysealedcivilcases2011.pdf). CHOP does not mention this standard, let alone try to meet it. This case does not meet the Judicial Conference's criteria of extraordinary circumstances necessary for sealing.

## CONCLUSION

For the reasons explained above, the United States respectfully requests that the Court deny CHOP's motion to seal in its entirety. The government stands ready and willing to meet and confer with the hospital about sealing, redacting, or protecting any protected health information or other confidential information in any future filings.

Dated this 24th day of July, 2025.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

BRETT SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

SARMAD KHOJASTEH
Senior Counsel
Civil Division

LISA HSIAO
Acting Director

 /s/ Ross S. Goldstein
ROSS S. GOLDSTEIN
PATRICK RUNKLE
Assistant Directors

SCOTT B. DAHLQUIST
Trial Attorney

United States Department of Justice
Consumer Protection Branch
P.O. Box 386
Washington, DC 20044
Tel:     202-353-4218
Fax:     202-514-8742
ross.goldstein@usdoj.gov
patrick.r.runkle@usdoj.gov
scott.b.dahlquist@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing Memorandum in Opposition upon the below attorneys via electronic mail on this 24th day of July, 2025.

| | |
|---|---|
| Lawrence G. McMichael<br>Nina C. Spizer<br>DILWORTH PAXSON LLP<br>1650 Market Street, Suite 1200<br>Philadelphia, PA 19103<br>lmcmichael@dilworthlaw.com<br>nspizer@dilworthlaw.com | Martine E. Cicconi<br>Charles F. Connolly<br>Raphael R. Prober<br>AKIN GUMP STRAUSS HAUER & FELD<br>2001 K Street, NW<br>Washington, DC 20006<br>mcicconi@akingump.com<br>cconnolly@akingump.com<br>rprober@akingump.com |

                                                             */s/ Ross S. Goldstein*