IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re Administrative Subpoena 25-1431-014 | Case No. 25-mc-0039-MAK <br><br> Assigned To Judge Mark A. Kearney <br><br><br> Date Action Filed:   July 8, 2025 |

**REPLY IN SUPPORT OF
MOTION TO LIMIT THE *SUBPOENA DUCES TECUM* ISSUED ON JUNE 12, 2025**

Lawrence G. McMichael (Pa. ID 28550)
Nina C. Spizer (Pa. ID 82443)
**Dilworth Paxson LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000

Martine E. Cicconi
Charles F. Connolly
Raphael R. Prober
**Akin Gump Strauss Hauer & Feld**
2001 K ST, N.W.
Washington, D.C., 20006
Tel: 202-887-4024
mcicconi@akingump.com
cconnolly@akingump.com
rprober@akingump.com

*Attorneys for Respondent,
The Children's Hospital of Philadelphia*

#125142674v1

## TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES** .................................................................................ii

**INTRODUCTION** ............................................................................................... 1

**ARGUMENT** ...................................................................................................... 2

    **I.**    The *Westinghouse* Factors Apply In This Case ............................ 2

    **II.**   The *Westinghouse* Factors Weigh in CHOP's Favor ................... 6

**CONCLUSION** ................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.*,
　276 F. Supp. 3d 324 (E.D. Pa. 2017),
　*aff'd*, 897 F.3d 518 (3d Cir. 2018)...................................................................................2

*Doe v. Luzerne Cnty.*,
　660 F.3d 169 (3d Cir. 2011)............................................................................................2

*Doe v. United States*,
　253 F.3d 256 (6th Cir. 2001) ..........................................................................................5

*Hertel & Brown*,
　2025 WL 83789 (W.D. Pa. Jan. 13, 2025).......................................................................5

*In re Aug., 1993 Regular Grand Jury Subpoena*,
　854 F. Supp. 1380 (S.D. Ind. 1994)................................................................................4

*In re Grand Jury Proc.*,
　867 F.2d 562 (9th Cir. 1989),
　*abrogated on other grounds*, *Jaffee v. Redmond*, 518 U.S. 1 (1996) .............................4

*In re KB Toys, Inc.*,
　736 F.3d 247 (3d Cir. 2013)............................................................................................3

*In re Subpoena Duces Tecum*,
　228 F.3d 341 (4th Cir. 2000) ..........................................................................................5

*In re Subpoena Served Upon Zuniga*,
　714 F.2d 632 (6th Cir. 1983) ..........................................................................................4

*Miss. ex rel. Hood v. AU Optronics Corp.*,
　571 U.S. 161 (2014).......................................................................................................4

*Malleus v. George*,
　2010 WL 3069669 (E.D. Pa. Aug. 5, 2010) ...................................................................2

*Scheetz v. Morning Call, Inc.*,
　1990 WL 82082 (E.D. Pa. June 11, 1990) .....................................................................4

*United States v. Westinghouse Elec. Corp.*,
　638 F.2d 570 (3d Cir. 1980)..................................................................................*passim*

*United States v. Whispering Oaks Residential Care Facility, LLC*,
　673 F.3d 813 (8th Cir. 2012) ..........................................................................................5

*United States ex rel Roberts v. QHG of Ind.*,
   1998 WL 1756728 (N.D. Ind., Oct. 8, 1988) ................................................................. 4

**Statutes**

18 U.S.C. § 3486, et seq ............................................................................................... *passim*

Health Insurance Portability and Accountability Act of 1996,
   Pub. L. No. 104-191, 110 Stat. 1936 (1996), (HIPAA) ......................................... *passim*

**Other Authorities**

U.S. CONST. amend. IV. ....................................................................................................... 5

Executive Order 14187, Protecting Children From Chemical and Surgical
   Mutilation (Jan. 28, 2025) ............................................................................................. 6

FTC, *Request for Public Comment Regarding "Gender Affirming Care"
   for Minors* (July 28, 2025),
   https://www.ftc.gov/system/files/ftc_gov/pdf/GAC-RFI-FINAL.pdf .......................... 10

**INTRODUCTION**

In the Memorandum accompanying its Motion to Limit ("Memorandum"), The Children's Hospital of Philadelphia ("CHOP") explained why the patient-specific health information sought by the subpoena issued to CHOP ("the Subpoena") from the Department of Justice ("DOJ") is exceedingly sensitive, containing intimate, personal details about the lives and struggles of a uniquely vulnerable group of CHOP patients. CHOP explained how disclosure of that information to DOJ "would be very damaging to the[] mental health" of those patients "and could even result in thoughts of, or completed, suicide." ECF No. 1 at 15 ("Mem.") (citing Declaration of Linda Hawkins and Dr. Nadia Dowshen ¶ 16 ("Hawkins & Dowshen Decl.")). And CHOP explained how disclosure would damage the relationship CHOP shares with *all* of its patients and their families by chilling their willingness to seek medical care and to be candid in conversations with their providers.

The Government does not meaningfully engage with those consequences, treating them as effectively irrelevant to the questions raised in CHOP's Motion. According to the Government, DOJ's broad statutory authority to issue the Subpoena answers any and all questions about its enforceability, regardless of the privacy interests impacted. But that is not the law in this Circuit. Rather, the Third Circuit's controlling decision in *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980), ensures that the privacy interests of patients whose records are subject to an administrative subpoena are appropriately considered and balanced against the requesting agency's need for information. Here, the outcome of the required balancing is clear: The first-order privacy concerns implicated by the Subpoena to CHOP far outweigh DOJ's need—particularly where the Government offers no facts to suggest that the "potential consumer-protection violations" and "potential misconduct" allegedly at the center of its investigation are actually occurring at CHOP.

## ARGUMENT

**I.      The *Westinghouse* Factors Apply In This Case**

*Westinghouse* is binding Third Circuit precedent. Its seven-factor balancing test has been cited repeatedly by the Court of Appeals and courts in this district without any hint that it has been overruled or abrogated by intervening precedent. *Doe v. Luzerne Cnty.*, 660 F.3d 169, 178 (3d Cir. 2011) ("[*Westinghouse*] factors overwhelmingly weigh in Doe's favor"); *see also, e.g.*, *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 276 F. Supp. 3d 324, 389 n.56 (E.D. Pa. 2017) (*Westinghouse* applies in cases about the "disclosure of documents"); *Malleus v. George*, 10-cv-1357, 2010 WL 3069669 (E.D. Pa. Aug. 5, 2010) (citing *Westinghouse* in assessing privacy interest), *aff'd*, 897 F.3d 518 (3d Cir. 2018). The *Westinghouse* framework is also tailor-made for this case—it is designed to apply when a regulatory regime affords an agency broad authority to obtain records, but information within those records raises privacy concerns that must be weighed against the government's need for access.

a.      None of the reasons the Government offers for discarding that on-point precedent is compelling. The centerpiece of the Government's position that this Court should not apply *Westinghouse* is its claim that, by affording DOJ an unbounded right to obtain information via a subpoena issued pursuant to the Health Insurance Portability and Accountability Act (a "HIPAA subpoena"), Congress set up a "specific, Constitutionally compliant" mechanism to procure sensitive health information. ECF No. 13 ("Opp.") at 4. According to the Government, "the statute that authorizes the administrative subpoena[]"– 18 U.S.C. § 3486—"strikes an appropriate privacy balance," "in essence abrogat[ing] the *Westinghouse* test." Opp. 1, 4.

2

Even leaving aside that the reach of a statute does not define constitutional boundaries, the Government's argument is illogical. According to the Government, Congress set *no limits whatsoever* on the DOJ's right to obtain information via a HIPAA subpoena provided that "basic procedural requirements" are met. Opp. 3. No information is too sensitive and no request too sweeping, as the extraordinary demand in this case demonstrates. In other words, the "appropriate privacy balance," in the Government's view, is no balance at all. Opp. 1.

The Government does not and cannot explain how an unrestrained authorization to obtain information could "abrogate" or "supersede" a test designed to weigh competing interests in a specific factual scenario. Opp. 3, 4. The very premise of *Westinghouse* is that, even where records are within an agency's authority to obtain, countervailing factors may warrant limitations on that authority in some circumstances. No congressional assessment of "privacy balance" (Opp. 1) replaced that framework when HIPAA was enacted.

Separate and apart from its flawed reasoning, the Government's argument fails on its own terms. Despite imploring this Court to "simply apply" section 3486's "clear and unambiguous" text (Opp. 3 (quoting *In re KB Toys, Inc*., 736 F.3d 247, 251 (3d Cir. 2013)), the Government ignores a key provision of the statute: section 3486(a)(7). In that provision, Congress made clear that any legal standards recognized by the federal courts for the protection of information in the context of court-issued subpoenas before HIPAA's passage remain valid against a subpoena issued pursuant to section 3486. "A summons issued under this section," Congress provided, "shall not require the production of anything that would be protected from production under the standards applicable to a subpoena duces tecum issued by a court of the United States." 18 U.S.C. § 3486(a)(7).

Before HIPAA's enactment, courts routinely applied the *Westinghouse* factors and similar balancing tests to evaluate motions to quash non-administrative subpoenas. For example, in *Scheetz v. Morning Call, Inc.*, No. 89-cv-6755, 1990 WL 82082 (E.D. Pa. June 11, 1990), a court in this district applied *Westinghouse* to evaluate a motion to quash a subpoena for medical records. *Id.* In the grand-jury context, courts also weighed privacy interests against the need for the information sought. *See In re Subpoena Served Upon Zuniga*, 714 F.2d 632, 639-40 (6th Cir. 1983); *In re Grand Jury Proc.*, 867 F.2d 562, 565 (9th Cir. 1989), *abrogated on other grounds*, *Jaffee v. Redmond*, 518 U.S. 1 (1996); *In re Aug., 1993 Regular Grand Jury Subpoena*, 854 F. Supp. 1380, 1388-92 (S.D. Ind. 1994) (noting agreement that privacy interests should be balanced against need for information); *cf. United States ex rel Roberts v. QHG of Ind.*, 97–CV–174, 1998 WL 1756728 (N.D. Ind., Oct. 8, 1988) (collecting cases applying balancing tests). Hence, when HIPAA was enacted, "the standards applicable to a subpoena duces tecum issued by a court of the United States" included assessment of whether records were "protected from production" based on a balancing of privacy concerns against informational need. 18 U.S.C. § 3486(a)(7).

Courts "presume that Congress is aware of existing law when it passes legislation." *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014) (citation omitted). Congress, therefore, should be presumed to have intentionally covered privacy-balancing tests when it specified that court-recognized limitations on production would apply to HIPAA subpoenas. Respecting that congressional choice in this Circuit necessitates subjecting HIPAA subpoenas like the one issued to CHOP to the *Westinghouse* framework.

b.  That no court has yet had occasion to do so is neither surprising nor revealing. Decisions reviewing HIPAA subpoenas are rare. As the Government

4

acknowledges (Opp. 3 n.1), only one court in this Circuit has even "discuss[ed]" a HIPAA subpoena, let alone assessed a motion to quash.[1]  And the facts of that case make clear why *Westinghouse* was not considered—by the time the case reached the court, the government had already obtained patient information from a third party, and the question was whether that evidence should be suppressed in the ensuing criminal trial.  *See Hertel & Brown*, 2025 WL 83789, at *2-5.  Accordingly, the court focused on whether the defendants could assert *their own* expectation of privacy in the information sufficient to establish standing for a Fourth Amendment claim.  *Id.* at *2.  The privacy interest *patients* maintain in their health information—the touchstone of *Westinghouse*—was simply "not at issue."  *Id*. at *5.

It is equally unsurprising that other courts have not applied *Westinghouse* to HIPAA subpoenas.  The decision is Third-Circuit precedent and is not binding elsewhere.  In any event, in two of the three out-of-circuit cases the Government cites, the courts did not address patient privacy concerns and thus, like in *Hertel & Brown*, had no occasion to balance those interests against DOJ's need for information.  *See Doe v. United States*, 253 F.3d 256, 264-65 (6th Cir. 2001); *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012).  In the remaining case, the Fourth Circuit did not disregard the privacy interests as the Government urges, it simply found that they were outweighed in the circumstances of that case.  *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000).  The court's failure to apply an out-of-circuit precedent in reaching that conclusion says nothing about whether *Westinghouse* binds this Court.[2]

---

[1] In *United States v. Hertel & Brown Physical & Aquatic Therapy*, DOJ did not actually use a HIPAA subpoena to obtain patient information.  *See* No. 21-cr-39, 2025 WL 83789, at *1 (W.D. Pa. Jan. 13, 2025).

[2] Insofar as the Fourth Circuit was persuaded to reject the movant's challenge to the subpoena by "the limitation placed on uses of subpoenaed information by § 3486," 228 F.3d at 351, the court appears to have made the same mistake the Government makes here.  *See infra* pp. 8-9.

5

c. Far from "abrogat[ing]" *Westinghouse*, Congress set up a scheme in section 3486 that fits its sensible framework perfectly. The Government offers no persuasive reason why this Court should ignore *Westinghouse*, nor anything close to a justification for overturning it (even assuming this Court had the power to do so). Indeed, for all of its criticism of the Third Circuit's analysis (*see* Opp. 5-6), the Government does not suggest that any decision issued in the past 45 years overruled or even limited *Westinghouse*. That precedent, therefore, remains the law of this Circuit and must be applied in this case.

**II.    The *Westinghouse* Factors Weigh in CHOP's Favor**

The Government's application of the *Westinghouse* factors is no more persuasive than its attempt to side-step them.

a. With respect to the privacy-focused *Westinghouse* factors, the Government fails entirely to engage with the specific identifiable harms CHOP has shown will flow from enforcement of the Subpoena, including risks to the mental and physical health of CHOP patients. Instead, the Government relies on a slippery-slope argument: If CHOP can show that the privacy interests outweigh DOJ's need for information, the argument goes, anyone can and the resulting "exception" to HIPAA subpoena enforcement will swallow the rule.

That argument ignores the circumstances of this case. This is not a typical HIPAA subpoena issued in the course of a typical investigation. Rather, the investigation is directed from the highest levels of the Executive Branch and is premised on the position that medical treatments, which for years have been recognized and accepted by authoritative pediatric journals and research institutions, are nevertheless "maim[ing]" and "mutil[ating]" children. Executive Order 14187, Protecting Children From Chemical and Surgical Mutilation (Jan. 28, 2025). The Subpoena singles out a deeply vulnerable group of patients—minors and

6

young adults who have historically been subject to harassment and discrimination—and looks to expose the most intimate details of their young lives to (at a minimum) federal agents and prosecutors.

Those unique facts are why the four privacy-focused factors of the *Westinghouse* test—which, contra the Government's claim, are not "really just one factor" (Opp. 12)—weigh heavily in CHOP's favor. The Government elides those facts by reimagining its Subpoena as a routine "document request" of the type "common in . . . investigations" of healthcare fraud and related "statutory violations." Opp. 6-7. But nothing about the Subpoena or the underlying investigation is commonplace, and neither are the types of records responsive to the Government' demand.

*Westinghouse* accounts for those unique circumstances. It requires the Court to consider the nature of the *specific* records covered by the Subpoena, the harm flowing from disclosure of that *particular* information, and the damage disclosure will cause to the relationship in which the records were created—here, the critical and enduring relationship CHOP shares with its patients. Recognizing the gravity of those interests in this matter does not mean that *Westinghouse*'s privacy-focused factors will "weigh[] against" the Government in every case. Opp. 12. Rather, application of the balancing test here is informed by extraordinary sensitivities unmatched in other investigations.

b. The Government's analysis of the remaining three factors is no more faithful to *Westinghouse* or to section 3486. Start with its analysis of Factor 5—the adequacy of safeguards to prevent unauthorized disclosure. Although the Government contends that statutory "privacy protections" are "adequate to protect patient privacy" (Opp. 8), it is

7

unclear why the Government believes the statute affords any protection at all to records obtained via a HIPAA subpoena.

Citing 18 U.S.C. § 3486(e), the Government asserts that "the statute broadly prohibits the government from using or disclosing 'health information about an individual' that is obtained via this subpoena, and it further generally prohibits the government from using protected health information about a patient against that patient." Opp. 9. But the complete text of that provision shows that the Government is simply wrong about the restrictions the statute imposes. In its entirety, 18 U.S.C. § 3486(e)(1) reads:

> Health information about an individual that is disclosed under this section may not be used in, or disclosed to any person for use in, any administrative, civil, or criminal action or investigation directed against the individual who is the subject of the information unless the action or investigation arises out of and is directly related to receipt of health care or payment for health care or action involving a fraudulent claim related to health; or if authorized by an appropriate order of a court of competent jurisdiction, granted after application showing good cause therefor.

As the text shows, DOJ is *only* foreclosed from using or disclosing subpoenaed information about a patient in a non-healthcare-fraud investigation *against that patient*. Even then, DOJ may procure a court order allowing it to do so. The Government offers no explanation for its atextual contention that the statute "broadly prohibits" it from disclosing patient information received pursuant to the subpoena. Opp. 9. Nor does it explain how the "broad[] prohibit[ion]" it claims ties its hands nonetheless permits sharing with "state law enforcement agencies under existing law," *id.*, which it apparently agrees it may do.³

---

³ CHOP does not "misunderstand" Factor 5 by citing ways in which the information can be lawfully shared. Opp. 9. Rather, the import of the Government's (uncontested) authority to share patient health information with others is that more people are permitted to see and handle the information. That, in turn, leads to greater risk that the information will be unlawfully disclosed, either accidentally or purposefully. *See* Mem. 18

The Government's misreading of section 3486(e) infects its analysis of the remaining factors. "The statutory privacy protections," the Government claims, "resolve any doubt [about the balancing test] in the Government's favor." Opp. 12. Because, as just explained, *there are no statutory privacy protections*, those non-existent guardrails do nothing to "resolve . . . doubt" in the Government's favor. *Id.*

In any event, no statutory provision could tip the balance because the Government's need for the information sought comes nowhere close to outweighing the countervailing privacy interests. The Government proclaims that Factor 6 (the need for access) is "essentially dispositive" because "the investigation relates to potential misconduct against vulnerable children, leaving lifelong mental and physical side effects and consequences." Opp. 7, 8. But the Government offers no facts to support that assertion, let alone facts to suggest that any such "potential misconduct" occurred at CHOP. By contrast, CHOP has offered specific, credible, and *uncontested* evidence that disclosure of patient information will cause those same "vulnerable children" immeasurable mental anguish, possibly culminating in "thoughts of, or completed, suicide." Hawkins & Dowshen Decl ¶ 16. If unsupported allegations of misconduct were enough to overcome those weighty privacy interests, *Westinghouse*'s careful balancing test would be nothing more than a speedbump on the road to enforcement.

Recognizing that the four privacy-focused *Westinghouse* factors are meaningful also would not "divest the Government of its ability to protect children." Opp, 7, 8. As CHOP explained (Mem. 20-21), the Government has numerous options at its disposal to investigate purported violations of law without enforcing a dragnet-style subpoena for sensitive patient records. Indeed, since CHOP filed its Motion to Limit, the Federal Trade Commission has

issued a request for public comment on issues related to medical care for gender dysphoria.[4] Through that mechanism and others, the Government can engage with patients willing to discuss the treatment they received without the need to identify and seek out others who may be unwilling to talk through an invasive examination of their medical records.

Finally, the purported "express statutory mandate in HIPAA for DOJ to investigate" (Opp. 8) cannot carry the weight the Government assigns to it. If statutory authorization was itself dispositive, there would be no balancing required and *Westinghouse* would be effectively abrogated. For the reasons already explained, that is not the law.

\*\*\*

The Government's dissatisfaction with the outcome of the *Westinghouse* analysis is no reason to disregard it, overrule it, or reduce it to a rubber stamp. Rather, *Westinghouse* requires careful consideration of all seven factors illuminating the competing interests at stake. Here, that analysis yields the undeniable conclusion that the privacy interests of CHOP patients outweigh the Government's need for access to the subpoenaed records.[5]

## CONCLUSION

The Motion to Limit the Subpoena should be granted.

Dated: August 11, 2025                                  Respectfully submitted,

/s/ *Lawrence G. McMichael*
  LAWRENCE G. McMICHAEL

*Attorney for Respondent,*
*The Children's Hospital of Philadelphia*

---

[4] FTC, *Request for Public Comment Regarding "Gender Affirming Care" for Minors* (July 28, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/GAC-RFI-FINAL.pdf.

[5] CHOP appreciates the Government's willingness to consider options to minimize the impact of its subpoena on vulnerable patients. *See* Opp. 11. But the Government's proposal would still permit DOJ to demand patient-specific information and would not fully protect patient anonymity. *Id.* CHOP cannot agree to that arrangement for the reasons explained, but is willing to work with the Government to consider alternatives.

10

**CERTIFICATE OF SERVICE**

I, Lawrence G. McMichael, Attorney for Respondent, hereby certify that I have electronically filed and served the foregoing *Reply in Support of Motion to Limit the Subpoena* via the C/M ECF System and also upon the below Attorneys for Requestor via electronic mail on this day, August 11, 2025 as follows:

Brett Shumate, Assistant Attorney General -- Brett.a.shumate@usdoj.gov

Ross Goldstein – Ross.goldstein@usdoj.gov

Patrick Runkle – Patrick.r.runkle@usdoj.gov

Francisco Unger – Francisco.l.unger@usdoj.gov

Tiara Johnson – Tiara.a.johnson@usdoj.gov

Jordan Campbell – Jordan.c.campbell@usdoj.gov

/s/ *Lawrence G. McMichael*
LAWRENCE G. McMICHAEL

*Attorney for Respondent,*
*The Children's Hospital of Philadelphia*